### THE FIRST NATIONAL BANK OF GATESVILLE v. S. J. MINGS.

#### No. 1320.

**1.  Pledge—Purchase by Pledgee—Conversion.**

A pledgee who purchases the pledge at a public sale is not chargeable with a conversion of it, since such sale, unless ratified by the pledgor, is ineffectual to change the title or the relation of the parties.

**2.  Same—Right of Pledgee of Corporate Stock to Have it Transferred.**

In the absence of an agreement to the contrary, it is the right of a pledgee of corporate stock to have it transferred on the books of the corporation to his own name as the holder, and such transfer will not render the corporation liable for conversion, though made over the protest of the pledgor.

APPEAL from Coryell.  Tried below before Hon. J. S. STRAUGHAN.

*E. A. McDowell, H. N. Atkinson* and *L. C. Alexander,* for appellant.

*C. P. White, John L. Dyer* and *J. C. Muse,* for appellee.

COLLARD, ASSOCIATE JUSTICE.—This is a suit by the appellee, S. J. Mings, against the appellant, The First National Bank of Gatesville, for the alleged value of certain 150 shares of stock in the bank, the property of plaintiff, alleged to have been converted by the defendant bank by fraudulently and wrongfully transferring the same on its books to the Central National Bank of Dallas, Texas. Defendant impleaded the Central National Bank of Dallas, but it was dismissed from the case on its plea of privilege that it was sued in a county other than that of its residence. Judgment was rendered by the court, a jury being waived, for plaintiff Mings against defendant for $10,500, from which defendant has appealed.

We do not think the evidence shows a conversion of the stock as alleged, and therefore conclude that the judgment of the court below is erroneous as claimed by appellant in appropriate assignment of error.

The facts are as follows:

Plaintiff Mings was the owner of the stock, 150 shares, as alleged. He obtained a loan of $15,000 from the Central National Bank of Dallas, and as collateral security therefor delivered the certificates for the stock to the bank as a pledge, at the same time, on May 27, 1890, executing his note to the bank for the amount of the loan due in four months, bearing 12 per cent interest per annum from maturity, stipulating to pay ten per cent additional for attorney's fees if placed in the hands of an attorney for collection. The note stipulated: "This note is secured by pledge of the securities mentioned on the reverse side hereof, and in case of its non-payment, or should the drawer hereof when called upon refuse or fail to keep the margin hereon good, the holder hereof is authorized to sell the said securities at public or private sale without recourse or legal proceedings, and to make any transfers that may be required, applying the proceeds of sale to within note." The list of securities was not endorsed on the note from carelessness to do so.

Mings also gave a power of attorney in these words: "Know all men by these presents: That I, S. J. Mings, for value received have bargained, sold, assigned and transferred, and by these presents do bargain, sell, assign and transfer unto ——— one hundred and fifty (150) shares of one hundred ($100) dollars each, Nos. 3 to 17 inclusive, of the stock standing in my name on the books of the First National Bank of Gatesville, Texas. And I do hereby constitute and appoint Maurice E. Locke of Dallas, Texas, my true and lawful attorney irrevocably for me and in my name, place and stead, but to my use, to sell, assign, transfer and make over all or any part of the said stock, and for that purpose to make and execute all necessary acts of assignment and transfers thereof, and to substitute one or more persons with like full power, hereby ratifying and confirming all that said attorney M. E. Locke, or his substitute or substitutes, shall lawfully do by virtue hereof."

The certificates of stock were transferred in blank on the back of the certificates. Mings renewed the note for $15,000 on September 27, 1890,

due at four months, and secured by the same shares of stock. A pledge of securities was mentioned in the new note, but was not endorsed on its back, but the note "was collateraled by the stock." It was purely a renewal note for the exact amount, upon unchanged collateral, the stock being retained by the bank. Mings failed to pay the note or any part of it, claiming to be unable to do so, and Locke (who was the president of the Dallas bank) sold the stock at public sale at the court house door of Dallas County, on the first Tuesday in March, 1891, in legal sale hours, after posting notice on the bulletin board for about 18 days prior to the sale, and he also wrote Mings a personal letter advising him of the sale, which was mailed to him, but Mings did not, as he testifies, receive the notice. The stock was bought in at the sale by the Central National Bank of Dallas for $1000, and that amount credited on the Mings note. The face value of the stock was $15,000, and it was worth about 60 or 70 cents on the dollar. Mings transferred the certificates of stock in blank at the time he delivered them to the Dallas bank, and the blanks were filled in by that bank before they were sent to the Gatesville bank, as they afterwards were. Many people were present at the sale, and there were two or three bids, but it is not shown that the stock certificates were exhibited at the sale. The transfer on the back of each certificate signed by Mings is in these words: "For value received I hereby assign and transfer unto ——— ten shares of the stock evidenced by the within certificate, and do hereby irrevocably constitute and appoint ——— attorney in fact to transfer the said stock on the books of the company, with full power of substitution in the premises. Dated 3-9-1891." Each certificate called for ten shares of stock. When the Gatesville bank received the certificates from the Dallas bank, the first blank was filled in with the name of the Central National Bank of Dallas, Texas. After the sale of the stock by Locke, which was made by direction of the Dallas bank, the latter sent the certificates of stock to the Gatesville bank, demanding the issuance of new certificates of stock to it, the Dallas bank; and the Gatesville bank, with full knowledge of the facts, cancelled the old stock, and issued new certificates of stock for the same shares to the Central National Bank of Dallas, Texas, as shown by the books of the former bank. The new issue was so made on the 26th day of March, 1891. The Central National Bank sued Mings, in Dallas County, on his renewed note, then past due and unpaid, asking for foreclosure of lien upon the stock. After plaintiff had notice of the suit, and before he was required to answer or appear in the suit, which was on the 9th of March, 1891, and as soon as he learned that the Dallas bank had sold the stock and bought it in, he notified the Gatesville bank of the sale and the purchase at $1000, and notified it that his stock had been sacrificed, sold for such an insignificant amount as to work a fraud on his rights, and forbade the defendant bank to issue new stock to the Central National Bank, to protect and not to recognize the transfer of his stock, and that if it transferred the stock and issued new stock to the Dallas bank, he

would hold the Gatesville bank responsible by suit. The new certificates of stock were issued to the Dallas bank over this protest; whereupon the plaintiff brought this suit. The Dallas bank prosecuted its suit to judgment against Mings, he making no appearance therein, and on May, 1891, recovered judgment against him for over $16,000, no part of which, or of the renewal note, has been paid, the Dallas bank still holding the judgment. About the middle of January, 1891, Mings became involved in debt, and, unable to meet his obligations, resigned the presidency of the First National Bank of Gatesville and went to California, where he remained about a month. He was not able to pay the debt to the Dallas bank.

In January, 1893, two of the certificates of stock issued to the Dallas bank for twenty shares of stock were issued to Yearby of Pennsylvania, and on February the 17th the remaining 130 shares of the stock were re-issued to the First National Bank of Waco, Texas.

*Opinion.*— Was the sale of the stock at public sale by Locke to the Central National Bank of Dallas a conversion of the stock? Jones on Pledges lays down the rule that a "pledgee who purchases the pledge at a public sale is not chargeable with a conversion of it. Such a sale is ineffectual to change the title to the property, which remains vested in the pledgor as it was before the sale; but that is the only result. The sale is not void, but voidable at the election of the pledgor." Jones on Pledges, sec. 637; Bryan v. Baldwin, 52 N. Y. App., 232. The case cited was a suit on a note wherein the complaint showed a sale of certain stock pledged as security, and the application of the proceeds to the note. Defendant answered admitting the sale, but claimed that it was tortious because made without a previous notice, and demanded and claimed that the plaintiff was liable as for conversion of the stock. The stock was sold at auction and bid in by plaintiff. The trial court held that there was no conversion, and the judgment was affirmed. The court say: "The plaintiff being the pledgee of the stock, and in that character exposing it for sale, could not become the purchaser unless the defendant assented to the sale. The sale to plaintiff was not void, but voidable at the election of the defendant. The defendant was at liberty to ratify the sale, and had he done so, it would have been valid for all purposes. The ratification would have relieved it from any imputation of being tortious as to him. * * * But the defendant has not done this, but has elected to treat the purchase by plaintiff as illegal. This avoids the sale, and that being avoided by the defendant, the parties are remitted to their rights the same as though no sale had been attempted; the defendant is liable on the note, and the plaintiff still holds the stock as a pledgee."

In Canfield v. Minneapolis Agricultural & Mechanical Association, 14 Fed. Rep., it is held that where the pledgee, a bank, improperly purchased the pledge, nothing passed by the sale, and it still held the pledge

by its original title as a collateral security, and a bona fide purchaser only from the bank could acquire absolute ownership of the stock.

This doctrine seems to be undisputed as to pledgors and pledgees of stock. Jones on Pledges, secs. 635-640, 740; Heath v. Griswold, 18 Blatchf. (U. S.), 555; Cook on Stock and Stockholders, sec. 479; Colebrooke on Col. Securities, secs. 125, 126, 328, 332; Thompson on Corp., sec. 2677, p. 1942.

In the absence of an agreement to the contrary, the undoubted right of the pledgee of stock is to have it transferred on the books of the company to his own name as the holder, to have the old certificates cancelled and new certificates issued to himself, and so, he can collect dividends, accounting to the pledgor, vote the stock, etc. And if the company refuse to so transfer, he can have his action for damages, if any accrue, and compel the company to register the stock in his name. 2 Beach on Priv. Cor., secs. 639, 642, inclusive; Jones on Pledges, secs. 151, 152; 18 Am. & Eng. Enc. Law, 699-706, inclusive; Colebrooke on Col. Securities, secs, 272, 273.

If there had been no contract authority between the parties, the Central National Bank had the right as pledgees of plaintiff's stock to have it transferred on the books of defendant bank, as it was done, as long as the relation of pledgor and pledgee continued; and, as we have seen, this relation was not changed by the purchase of the stock by the Dallas bank. The evidence is without contradiction, and is in writing on the back of the certificates, that the Dallas bank had express authority to transfer the stock on the books of the defendant bank.

We are unable to see where the defendant was guilty of any tortious or fraudulent act in transferring the stock on its books to the Dallas bank so as to make it liable for a conversion. It has committed no fraud. The purchase of the stock by the Dallas bank for a small consideration, at a sale of which plaintiff had no notice, did not deprive plaintiff of his rights as pledgor of the stock. He could still redeem it out of the hands of the Dallas bank by payment of the debt for which it was pledged. It would be an anomaly to allow him to recover in this suit founded upon the transfer of the stock on defendant's books to the Dallas bank, the pledgor claiming a conversion by defendant, while he still owes to the pledgee, to whom the transfer was made, more than the stock is, or ever was, worth. The Dallas bank can be made to account to him, certainly upon his demand, and showing that he is entitled to any balance due in settlement. We do not think plaintiff under the facts had any cause of action against defendant bank, upon the alleged ground that it had participated with the Dallas bank in converting his stock by transferring it to that bank.

We conclude that the judgment of the court below should be set aside, and that judgment be here rendered for defendant, and it is so ordered.

Delivered October 2, 1895.          *Reversed and rendered.*

Writ of error refused.